*EXHIBIT 2*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT |

Jeffrey Weisen,

           Plaintiff,

vs.

Genuine Parts Company d/b/a
NAPA Auto Parts,

           Defendant.

Court File No.:

**AMENDED COMPLAINT**

Plaintiff, by and through his undersigned counsel, bring this action against Genuine Parts Company d/b/a NAPA Auto Parts, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq*. (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1. This case concerns Defendant's federal statutory obligation to ensure its facility becomes, *and remains*, compliant with the ADA. Accordingly, Plaintiff seeks: 1) remediation of the unlawful architectural barriers described below; and 2) modification of Defendant's ADA related policies, procedures, and practices in order to ensure that the facility remains ADA compliant. Plaintiff also seeks a nominal monetary award, his reasonable attorneys' fees, litigation expenses, and costs, and such other relief as is deemed just and proper, and/or is allowable under Title III of the ADA.

2. The ADA, enacted in 1990, is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. The ADA uses different means than other civil rights laws, but the purpose of the laws is the same: the eradication of discrimination. As one legal scholar explained: A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people. Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

3. Though disability rights laws are supposed to prevent the continued isolation and segregation of people with disabilities in the same tradition as other civil rights laws, some appear to regard disability rights requirements – particularly those involving physical access requirements, such as ramps and hand rails – as different, and less important, than other civil rights. *The Case of "Abusive" ADA Litigation, supra,* at 24. Some also appear to assume that ADA cases are abusive or unnecessary drains on courts; but private enforcement is central to accomplishment of the ADA's rightful purposes and, as has been demonstrated repeatedly, compliance does not happen without the credible threat of private enforcement. *Id.* at 9.

4. Title III of the ADA prohibits discrimination by places of "public accommodation," as that term is defined by 42 U.S.C. §12181 (7). It requires places of

public accommodation to be readily accessible to, an independently usable by, individuals with disabilities. 42 U.S.C. § 12182.

5. Under 28 C.F.R. § 36.201 (b) both the landlord who owns a building that houses a place of public accommodation and the tenant who owns or operates a place of public accommodation subject to the requirements of the ADA.

6. Violation of the ADA's standards of accessible design are actionable violations of the act. See e.g., *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

7. Plaintiff seeks a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) directing Defendant to make readily achievable alterations to its facility so as to remove architectural barriers to access and make its facility fully accessible to and independently usable by individuals with disabilities in accordance with the requirements of the ADA.

8. In addition to remediation of the architectural barriers above, injunctive relief as to Defendant's ADA related policies, procedures and practices is required to ensure Defendant's facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R. § 36.211 and 36.501.

9. The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendant has failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of

Defendant's ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

10. Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and compliant, and no assurance that Defendant will stay abreast of its ADA related obligations under the law.

11. Plaintiff also seeks a nominal monetary award in accordance with authority including *Tayler Bayer v. Neiman Marcus Group, Inc.*, No. 15-15287 (9th Cir. 2017) and his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505 and such other relief as is deemed just and proper, and/or is allowable under Title III of the ADA.

12. Despite passage of the ADA more than 25 years ago, to this date, Defendant's property is not fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers and take the actions clearly required of it by the ADA, even though such actions are readily achievable. Defendant's conduct constitutes an ongoing and continuous violation of the law.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under Title III of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12181-12189, which provides for concurrent state and federal court jurisdiction. Federal jurisdiction arises under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action includes federal law claims brought pursuant to Title III of

the ADA. The Court also has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

14.     Venue in this judicial district is proper because Defendant is located in and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

15.     Plaintiff Weisen suffers from paraparesis of both lower limbs, neurogenic bladder, and chronic pain, among other things. Mr. Weisen is fully dependent upon the use of a wheelchair or motor scooter. Mr. Weisen suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). He is therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et. seq.*

16.     Jeffrey Weisen has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA - and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Mr. Weisen is also well-aware of the benefits for the disabled when responsible business owners take the ADA's requirements seriously. Mr. Weisen is very much committed to doing all that he can to help himself, and other disabled

people, by pursuing a cause - holding businesses accountable for ignoring the ADA - that others may turn away from.

17. Jeffrey Weisen, age 58, resides in Minnesota. He regularly frequents businesses in the Twin Cities Metropolitan and surrounding area (Area) including restaurants, convenience stores, general stores, grocery stores and other businesses - and has done so for years and years. The ability to independently patronize businesses in the Area is important to Mr. Weisen and his quality of life; it enables him to obtain necessary goods and services and allows him to interact with the community, which is a critical social outlet for him.

18. Compliance with Title III is critical for the disabled community. If, for example, a toilet is not accessible with adequate maneuvering space, grab bars, etc. the disabled either cannot toilet, or cannot do so without assistance. Disabled individuals have been forced to urinate and defecate on themselves because a place of public accommodation did not have an accessible toilet. Similarly, without a properly striped parking lot including accessible parking and an accompanying access isle, disabled individuals face the threat that another may park so close to the vehicle he or she is travelling in that he or she will be unable to access that vehicle until the car parked beside it is moved, or without excessive struggle and risk of injury. Improper slopes at parking spaces and access aisles can result in a wheelchair rolling away from a disabled individual while transitioning from their vehicle and cause risk of injury. Improper slopes along access routes and sidewalks can make access difficult, taxing, cause physical discomfort,

and puts the disabled individual at risk for injury. And without an accessible entrance, disabled individuals are excluded from independent access to the premises entirely.

19. Defendant Genuine Parts Company d/b/a NAPA Auto Parts ("NAPA") owns and/ or operates NAPA and/or is the lessee of the real property upon which it is located at 1225 Gun Club Road, White Bear Lake, MN, a place of public accommodation within the meaning of the ADA.

## ARCHITECTURAL BARRIERS

20. Within the applicable limitations period, Mr. Weisen patronized NAPA, encountered and was subjected to discriminatory barriers which hindered and/or precluded his ability to patronize the business. Unlawful barriers at the business include, but not necessarily limited to, the following:

    a. lack of proper disabled parking signage in violation of the 2010 ADA Standards 502.6 and the 1991 ADA "Safe Harbor" Standards, 4.6 for reasons including the fact that the bottom of the sign is not at least 60 inches from the ground;

    b. a portion of the disabled accessible parking space(s) and/or access aisles(s) is steeper than 1:48 (2%) in violation of the 2010 ADA Standards 502.4;

    c. accessible parking that is not on the shortest accessible route to the entrance in violation of the 2010 ADA Standards 208.3;

    d. the curb ramp and the flared sides of the curb ramp projects into parking access aisles in violation of the 2010 ADA Standards 406.5;

e. there is no level landing for the curb ramp with a slope that is no steeper than 1:48 in all directions that is at least 36 inches long and at least as wide as the curb ramp in violation of the 2010 ADA Standards 406.4; and

f. an inadequately maintained parking lot with a broken, patched, littered, and deteriorated surface on the walking surface in violation of 28 CFR § 36.211 (Maintenance of Accessible Features) and the 2010 ADA Standards, 302.1 and 303.2.

## POLICIES, PROCEDURES, AND PRACTICES

21. In addition to remediation of the architectural barriers above, injunctive relief as to Defendant's ADA related policies, procedures and practices is required to ensure Defendant's facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R. § 36.211 and 36.501.

23. Defendant's ADA related policies, procedures, and practices are inadequate.

24. The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendant has failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendant's ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

25. Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and compliant, and no assurance that Defendant will stay abreast of its ADA related obligations under the law.

26. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA which exist at the facility. In order to fully identify all of the discriminatory conditions at the facility, Plaintiff requires an inspection which will be sought in the discovery phase of this litigation.

27. Compliance with the ADA is required by 42 U.S.C. § 12182(b)(2)(A)(iv) because remedying the barriers identified is readily achievable due to the lack of difficulty and low cost of remedying the barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable." 28 C.F.R. § 36.304(b).

28. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. See ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar.16, 2011).

29. As a person with a disability, Mr. Weisen has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

9

30. Mr. Weisen is not able to access the facility independently on a full and equal basis and is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein because of his disabilities and due to the barriers to access and violations of the ADA that exist at Defendants' facility.

31. Mr. Weisen lives near to the facility. Mr. Weisen intends to patronize the facility in the future, although the unlawful barriers described herein prevent him from being able to do so independently and deter him from doing so. Jeffrey Weisen's condition varies and, depending on the status of his condition on a given day, he is sometimes dependent upon having someone take him to or accompany him when he visits places. This limits his ability to make definitive plans to return to a place on a specific date. But he regularly patronizes businesses in the vicinity of the facility and would return to patronize the facility in the imminent future but for the barriers described herein.

32. The violations discussed above presently deter and discourage Mr. Weisen from returning to the facility for reasons including, but not necessarily limited to, the following: the above-referenced violations make it difficult or impossible for him to patronize the facility unless he twists, struggles and strains himself or obtains help from others; and puts him at risk of injury. All of these things negatively affect Mr. Weisen's sense of independence and can lead to humiliating accidents, derisive comments, embarrassment, a loss of dignity, and feelings of being stigmatized as different or inferior.

33. Mr. Weisen will return and patronize the facility without hesitation when the barriers identified herein have been removed or cured: and he will return within the next

year in any event, albeit not independently, because it is located in an area he regularly socializes in and because he is interested in checking on the Defendant's ADA compliance and that of other similar businesses as a tester in hopes to thereby increase accessibility for the disabled.

34. Defendant has intentionally maintained the facility in a condition that violates the ADA for reasons including, but not limited to, the following: the ADA was passed in 1990 and has been well publicized; the above-described barriers are intuitive and obvious; ADA Title III compliance information and assistance is readily available, at no cost (see e.g., ada.gov); Defendant exercised control over the conditions at the facility; and Defendant has and continues to maintain the facility in a condition that does not comply with the easily understandable accessibility design standards that apply here and which can be achieved at modest expense.

35. Jeffrey Weisen is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to the facility unless and until Defendant is required to remove the architectural barriers to equal and independent access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

36. Absent injunctive relief, Defendant's unlawful conduct herein described will continue to cause injury to Plaintiff and other disabled individuals, who will continue to be unable to independently access the facility and/or to enjoy the goods, services, privileges,

advantages and/or accommodations offered therein on a full and equal basis, in violation of the rights ensured to the disabled by the ADA.

### FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. §§ 12101

37. Plaintiff incorporates and re-alleges the paragraphs above.

### Denial of Full and Equal Enjoyment and Use

38. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

39. A public accommodation under the ADA includes, inter alia, "sales establishments" and "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12182 (7).

40. Defendant has discriminated against Plaintiff and others by its failure to make their place of public accommodation fully accessible to persons with disabilities on a full, equal, and independent basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder as described above.

41. Mr. Weisen has been denied full and equal access to the facility and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

### Failure to Remove Architectural Barriers in an Existing Facility

42. The ADA specifically prohibits the failure to remove architectural barriers in existing facilities where such removal is readily achievable under 42 U.S.C. § 12182 (b)(2)(A)(iv) and 28 C.F.R. § 36.104.

43. Even when an entity can demonstrate that removal of a barrier is not readily achievable, it must nevertheless provide for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations goods available through alternative means, if alternative means are readily achievable. 42 U.S.C. § 12182 (b)(2)(A)(v).

44. Plaintiff alleges that removal of the barriers at the facility is readily achievable.

45. In the alternative, to the extent the removal of any or all of the barriers at issue is not determined to be readily achievable, Plaintiff alleges that Defendant violated the ADA by failing to make the required goods, services, etc. equally available to the disabled through alternative means.

46. To the extent that the facility was designed and constructed for first occupancy after January 26, 1993, Plaintiff alleges that removal of the barriers at the facility is not structurally impracticable under 42 U.S.C. § 12182 (b)(2)(A)(v).

47. To the extent that the facility was altered after January 26, 1992 (including, but not limited to, any remodeling, renovation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the

configuration of walls and full-height partitions) Plaintiff alleges that that the facility is not accessible to the disabled to the maximum extent feasible under 42 U.S.C. § 12183 (a)(2).

### Inadequate Policies, Procedures, and Practices

48. ADA Title III entities have an ongoing duty to review their places of public accommodation for compliance and to remediate non-compliance as required.

49. Defendant's ADA related policies, procedures, and practices are inadequate.

50. Defendant's policies, procedures, and practices (including, but not limited to, those ensuring the identification and remediation of prohibited barriers, maintenance of accessible features, training and future compliance) are inadequate to ensure ongoing compliance with the ADA and therefore must be modified accordingly.

51. The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendant has failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendant's ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

52. Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and compliant, and no assurance that Defendant will stay abreast of its ADA related obligations under the law.

53. Defendant has and continues to discriminate against Plaintiff and others by its failure to adopt and implement adequate ADA related policies, procedures and practices.

54. Injunctive relief as to Defendant's ADA related policies, procedures and practices is required to ensure Defendant's facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and such other applicable legal authority.

### Nominal Monetary Award

55. Plaintiff alleges a right to a nominal monetary award as equitable injunctive relief in accordance with authority including *Tayler Bayer v, Neiman Marcus Group, Inc.*, No. 15-15287 (9th Cir. 2017) and such other authority as may be applicable.

### Attorneys' Fees and Costs

56. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117 and 28 C.F.R. § 36.505, in connection with the prosecution of this matter.

### SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

57. Plaintiff incorporates and re-alleges the paragraphs above.

58. This cause of action is brought pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

59. Plaintiff seeks and is entitled to a judgment declaring that the Facility, as of the date this matter was commenced, was being operated unlawfully and in violation of the ADA and its implementing regulations for reasons including, but not necessarily limited to the unlawful denial of full and equal enjoyment of use, unlawful violations of the ADA

accessible design standards, unlawful failure to remove architectural barriers, and unlawful policies, practices and/or procedures identified above.

**WHEREFORE**, Plaintiff respectfully requests:

a. That the Court issue a Declaratory Judgment determining that Defendant's facility, at the commencement of this instant suit, was being operated in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make readily achievable alterations to its facility so as to remove architectural barriers to access and make its facility fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and enjoining operation of the Facility until such time as the alterations are completed;

c. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendant to make reasonable modifications in policies, practices and/or procedures necessary to ensure current and ongoing compliance with the ADA and enjoining operation of the Facility until such time as the modifications are made and implemented;

d. That the Court award Plaintiff injunctive relief in the form of a nominal monetary sum;

e. That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, or as otherwise provided by law; and

f. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

Dated: January 7, 2021

THRONDSET MICHENFELDER, LLC

By: _____
Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: chad@throndsetlaw.com
Email: pat@throndsetlaw.com
*Attorneys for Plaintiff*

The undersigned hereby acknowledges that costs, disbursement, and reasonable attorney fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.221

_____
Chad A. Throndset (#0261191)